O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY TUCKER, | ) | NO. CV 12-5367-SVW (MAN) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | |
| v. | ) | COMPLAINT WITH LEAVE TO AMEND |
| | ) | |
| CITY OF SANTA MONICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

On June 25, 2012, plaintiff, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint"). Plaintiff sued the following defendants: City of Santa Monica ("City"); Timothy Jackman, former Chief of Santa Monica Police Department ("SMPD"); SMPD officers Louis Marioni, Scott McGowen, and Michael Chun; CSO Carlton Palmer; Terry White, described by plaintiff as City Attorney[1]; and Does 1 through 10.

---

[1] The Court takes judicial notice that Terry White actually is the Chief Deputy City Attorney, Criminal Division. *See* http://www.smgov.net.

Congress has mandated that courts perform an initial screening of *in forma pauperis* civil actions. This Court "shall" dismiss such an action "at any time," including before service of process, if it concludes that the complaint is frivolous, fails to state a claim upon which relief can be granted, or seeks relief against a defendant who is immune from the requested relief. 28 U.S.C. § 1915(e)(2).

In screening a *pro se* civil rights complaint, the Court must construe its allegations liberally and must afford the plaintiff the benefit of any doubt. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). The standard applicable on screening is the standard for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. The complaint need not contain detailed factual allegations, but it must contain sufficient factual matter to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). If a complaint is dismissed, a *pro se* litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Karim-Panahi, 839 F.2d 621, 623 (9th Cir. 1988); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

On Thursday, May 5, 2011, sometime between 9:30 and 10:00 p.m., plaintiff was riding his bicycle on the Third Street Promenade in Santa Monica, when CSO Palmer jumped in front of him and shouted, "What the [obscenity] do you think you are doing!" (Complaint ¶ 7.) Plaintiff

turned his bicycle around and walked towards Santa Monica Boulevard. (*Id.*) Officers Marioni, Chun, and McGowen shouted "Stop," and plaintiff complied. (*Id.*) The officers ordered plaintiff to sit down. (*Id.*) When plaintiff asked whether he was being arrested and on what charges, the officers said he was not being arrested but would be if he did not sit down. (*Id.*) The officers handcuffed plaintiff and searched his backpack. (*Id.*) They placed plaintiff and his bicycle in a patrol vehicle and drove him to the police station, without telling him that he was under arrest. (*Id.* at ¶¶ 7, 8.) Plaintiff contends that the officers had no warrant for his arrest and knew that he had not committed any crime or public offense. (*Id.* at ¶ 31.) He asserts that the incident resulted in his "first and only criminal booking." (*Id.* at ¶ 37.)

At the police station, defendants Marioni and McGowen subjected plaintiff to "multiple physical abuses," which included "being thrown to the floor in handcuffs, having arms and hands wrenched to deliberately and sadistically cause pain and suffering, and [being] thrown to the floor of a cell, uncuffed and threatened with a taser." (Complaint ¶ 8.)

In custody, plaintiff repeatedly demanded and was refused access to a telephone. (Complaint ¶ 9.) He was not arraigned and remained in custody until 9:45 p.m. on May 6, 2011, when he was released after posting $10,000 bail. (*Id.*) He was directed to appear in court and did so, but he discovered that no criminal charges had been filed. (*Id.*) The same day, plaintiff returned to the police station to file a formal complaint and was seen by the duty watch commander, who persuaded him

not to do so. (*Id.*) On November 7, 2011, plaintiff filed a tort claim for damages, which was rejected on December 20, 2011. (*Id.* at ¶¶ 9, 30.) There was also an internal investigation. (*Id.* at ¶ 9.)

Plaintiff asserts the following federal claims: (1) unreasonable seizure, due process deprivations, and conspiracy against all defendants (Claim One); and (2) unlawful custom and practice against Jackman and the City (Claim Two). (Complaint ¶¶ 11-24.) He asserts the following state law claims: (1) assault and battery against the City, Marioni, McGowen, Chun, Palmer, and Does 5 through 10 (Claim Three); (2) false imprisonment against the City, Marioni, McGowen, Chun, Palmer, and Does 1 through 10 (Claim Four); (3) intentional infliction of emotional distress against all defendants (Claim Five); (4) negligence against all defendants (Claim Six); (5) negligent employment/retention/supervision against Jackman (Claim Seven); (6) violation of California Civil Code § 52.1 against all defendants (Claim Eight); (7) conversion against all defendants (Claim Nine); and (8) trespass to chattels against all defendants (Claim Ten). (*Id.* at ¶¶ 25-59.) Plaintiff seeks damages. (Complaint at 17.)

## DISCUSSION

### I.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT OR THE DUE PROCESS CLAUSE.

Plaintiff asserts claims under the First, Fourth, and Fourteenth Amendments. (Complaint ¶¶ 1, 12.) The Complaint contains no factual basis for a First Amendment claim under any cognizable legal theory.

1  *See* <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
2  1990)(claims can be dismissed for lack of cognizable legal theory or
3  insufficient facts supporting cognizable legal theory).  Nor has
4  plaintiff asserted a factual basis for a due process violation.  Because
5  plaintiff was not arraigned, his claims challenging his arrest and
6  detention arise under the Fourth Amendment, not the Due Process Clause.
7  *See* <u>Pierce v. Multnomah County</u>, 76 F.3d 1032, 1043 (9th Cir.
8  1996)(holding that "the Fourth Amendment sets the applicable
9  constitutional limitations on the treatment of an arrestee detained
10 without a warrant up until the time such arrestee is released or found
11 to be legally in custody based upon probable cause for arrest").

13      At this early stage of the action, the Court finds that plaintiff's
14 Fourth Amendment claims against defendants Palmer, Marioni, Chun, and
15 McGowen based on his arrest and detention withstand screening.
16 Plaintiff's First and Fourteenth Amendment claims, however, must be
17 dismissed.

19 **II.  PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST DEFENDANT**
20 **     WHITE**.

22      Plaintiff names as defendant Terry White, the Chief Deputy City
23 Attorney, Criminal Division.  Plaintiff contends that White directed
24 that plaintiff be held in custody without arraignment, although "the
25 courts were open and available," to punish him for past litigation
26 against SMPD officers.  (Complaint ¶ 9; *see also id.* at ¶ 31:
27 "Plaintiff was intentionally prevented from appearing before a judge at
28 the direction of Defendant City Attorney Terry White.").

1   To state a claim under Section 1983, a plaintiff must allege that
2   the defendant, acting under color of state law, deprived him of a right
3   secured by the Constitution or laws of the United States. *See* <u>West v.</u>
4   <u>Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988); <u>Jones v.</u>
5   <u>Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant
6   is not liable under Section 1983 unless the facts establish either the
7   defendant's personal involvement in the constitutional deprivation, or
8   a causal connection between the defendant's wrongful conduct and the
9   alleged constitutional deprivation. *See* <u>Hansen v. Black</u>, 885 F.2d 642,
10  646 (9th Cir. 1989); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir.
11  1978).

13  Here, plaintiff does not contend that defendant White had anything
14  to do with his arrest and detention. His claims against defendant White
15  arise solely out of the failure to arraign him. Specifically, plaintiff
16  complains that he was held all day on Friday, May 6, 2011 without being
17  arraigned.

19  In general, arraignment must take place within 48 hours of a
20  warrantless arrest. California Penal Code § 825; <u>County of Riverside</u>
21  <u>v. McLaughlin</u>, 500 U.S. 44, 52-56, 111 S. Ct. 1661, 1668-70 (1991)
22  (Fourth Amendment requires judicial determination of probable cause for
23  detention, which may be combined with arraignment, to be held within 48
24  hours of arrest). According to the Complaint, however, plaintiff was
25  released from custody 24 hours after his arrest and was never criminally
26  charged. (Complaint ¶¶ 7, 9.) Thus, plaintiff was released well before
27  the expiration of the 48-hour limit for pre-arraignment detention. *See*
28  <u>United States v. Guthrie</u>, 265 Fed. Appx. 478, 479 (9th Cir., Jan. 23,

2008)(27-hour pre-arraignment detention presumptively constitutional). Moreover, he was never arraigned, because no criminal proceedings were initiated against him. Presumably, plaintiff is not seeking to hold White liable for the decision not to file charges, which is, in any event, protected by the doctrine of prosecutorial immunity. *See* Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S. Ct. 984, 995 (1976); Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615 (1993).

Plaintiff, therefore, has not alleged any constitutional violation -- or indeed, any wrongful act -- committed by defendant White. The Complaint contains no factual basis for holding White liable. Plaintiff's claims against defendant White, therefore, must be dismissed.

## IV. **PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST THE CITY OR OFFICIAL CAPACITY CLAIMS AGAINST INDIVIDUAL DEFENDANTS.**

Plaintiff has named the City as a defendant. In addition, plaintiff has asserted official capacity claims against defendants Jackman, Marioni, McGowen, and Chun. (Complaint at 1 & ¶ 2.)

To allege a Section 1983 claim against an individual defendant, a plaintiff need only allege a constitutional deprivation inflicted on him by that defendant. To allege a Section 1983 claim against a municipality such as the City, more is needed. Plaintiff must allege a constitutional deprivation *and* a policy, custom, or practice of the City that was the "moving force" of the constitutional deprivation. Monell v. Department of Social Services, 436 U.S. 658, 694-95, 98 S. Ct.

2018, 2037-38 (1978); <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 957 (9th Cir. 2008); <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007).

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694, 98 S. Ct. at 2037-38. Thus, a local governmental entity is not liable for the acts of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" or unless the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91, 98 S. Ct. at 2035-36.

Here, plaintiff contends that the City has maintained policies that require and encourage the deprivation of constitutional rights and the employment and retention of police officers and jailers who have a "propensity for brutality, dishonesty, bigotry and numerous other serious abuses." (Complaint ¶ 21.) He alleges that the City, the SMPD, and Jackman: knew before this incident that officers Marioni, McGowen, Chun, and Palmer had committed "similar acts of criminality, dishonesty and abuse" against other members of the public; refused to adequately investigate misconduct and discipline SMPD officers; retaliated against

officers who reported abuse by other officers; did not adequately train or supervise SMPD officers; condoned the practice of prosecuting groundless criminal charges to insulate the City from civil liability and the practice of reducing criminal charges in return for releasing SMPD officials from civil liability; encouraged a conspiracy of silence; engaged in the practice of refusing to provide exculpatory and impeaching evidence to prosecutors and criminal defendants; and encouraged an atmosphere of lawlessness. (*Id.* at ¶ 9.)

These allegations are too conclusory to support plaintiff's *Monell* claims against the City. See Iqbal, 556 U.S. at 680-81, 129 S. Ct. at 1951 (requiring specific allegations regarding the policy at issue in a civil rights case). Moreover, policies pertaining to the prosecution of criminal charges and handling of evidence have nothing to do with what happened to plaintiff, who was never criminally charged. Plaintiff must describe policies or customs that were the "moving force" of the alleged constitutional deprivations inflicted on *him*; there must be a direct causal link between the policies and the alleged constitutional deprivations. See Villegas, 541 F.3d at 957. Plaintiff, therefore, has not alleged a plausible *Monell* claim against the City. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; Twombly, 550 U.S. at 556, 127 S. Ct. at 1965.

As for plaintiff's official capacity claims against defendants Jackman, Marioni, McGowen, and Chun, an official capacity claim for damages is merely another way of pleading a claim against the governmental entity of which the official is an agent. Monell, 436 U.S. at 690 n.55, 98 S. Ct. at 2035 n.55. Thus, plaintiff's official

capacity claims are, in effect, claims against the City, and fail for the same reasons.

Accordingly, plaintiff's *Monell* claims against the City and his official capacity claims against defendants Jackman, Marioni, McGowen, and Chun must be dismissed.

### III. **PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST DEFENDANT JACKMAN.**

Plaintiff names as defendant Timothy Jackman, who was the SMPD Chief of Police at the time of the events giving rise to plaintiff's claims.

Supervisory personnel generally are not liable under Section 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. *See, e.g.*, Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). A supervisory official may be liable under Section 1983 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 2101 (2012); Hansen, 885 F.2d at 646. Supervisory liability also may exist without overt personal participation if the supervisory official implements a policy so deficient that it is the moving force behind the constitutional violation. Redman, 942 F.2d at 1446. Thus, supervisors can be held liable for: (1) their own culpable action or inaction in

the training, supervision, or control of subordinates; (2) their acquiescence in the complained-of constitutional deprivation; and (3) conduct that showed a reckless or callous indifference to the rights of others. Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000).

Plaintiff does not allege that Jackman had any personal involvement in his arrest and detention. Rather, plaintiff contends that Jackman is responsible for the customs and polices described above alleged in connection with plaintiff's *Monell* claims. (*See* Complaint ¶¶ 22, 23.) However, plaintiff's allegations regarding the policies allegedly implemented by Jackman are largely conclusory, and plaintiff does not list any specific incidents of misconduct by SMPD officers of which Jackman was given notice.[2] There is no resemblance between the conclusory allegations in Paragraph 22, some of them patently inapposite to this action, and the detailed factual allegations deemed sufficient in Starr.[3] Nor has plaintiff shown a causal link between the policies allegedly implemented by Jackman and the harm to him; indeed, as

---

[2] *See* Henry A. v. Willden, 678 F.3d 991 (9th Cir. 2012)(foster children's allegations that supervisors of foster care system had knowledge of reports documenting systemic failures of foster care were insufficient to state a claim absent allegations that supervisors had personal knowledge of specific constitutional violations leading to injuries or had direct responsibility for training or supervising caseworkers); *contrast* Starr, 652 F.3d at 1208-10 (allegations describing specific incidents of inmate attacks caused by deputy misconduct as well as numerous instances of notice provided to Sheriff Baca were sufficient to state a claim against him).

[3] *See* Hydrick v. Hunter, 669 F.3d 937, 941 (9th Cir. 2012) (finding supervisory liability allegations insufficient and explaining that the decision in Starr depended on the "detailed factual allegations" of the complaint); Ramirez v. County of Los Angeles, 2012 WL 2574826, at *4 (C.D. Cal., July 3, 2012)(dismissing supervisory liability claim when plaintiff did not allege specific past incidents of excessive force of which Sheriff Baca was given notice).

previously discussed in connection with plaintiff's *Monell* claim, the alleged policies pertaining to the prosecution of criminal charges are plainly inapplicable to the facts of this case.

Finally, although plaintiff alleges that Jackman "turned a blind eye" to proof of the officers' wrongdoing in connection with the investigation of plaintiff's citizen's complaint (Complaint ¶ 10), allegations that a supervisor ratified an officer's conduct through the handling of a subsequent investigation cannot show that the supervisor *caused* the officer's conduct. *See* Jones v. County of Sacramento, 2010 WL 2843409, *6-7 (E.D. Cal., July 20, 2010)(discussing applicable case law and concluding that a supervisor's "isolated and subsequent ratification" of an officer's conduct by failing to sustain a citizen's complaint "can never be sufficient to show that the supervisor caused the officer's conduct," especially after Iqbal).

Accordingly, plaintiff's allegations are insufficient to state a plausible supervisory liability claim against defendant Jackman. Plaintiff's claims against him, therefore, must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint that attempts to cure the defects in the First Amended Complaint described herein. The First Amended Complaint, if any, shall be complete in itself. It shall not refer in

12

1  any manner to the original Complaint.

2

3       **Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

7

8  DATED: July 20, 2012

9

10                                   _Margaret A. Nagle_
                                     _____
11                                        MARGARET A. NAGLE
                                     UNITED STATES MAGISTRATE JUDGE

13